UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA SALTO CRUZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 14-cv-03792-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 12, 13 |

Plaintiff Maria Salto Cruz seeks judicial review of the Social Security Administration Commissioner's ("Commissioner") denial of her application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). Before the Court are Cruz's motion for summary judgment and the Commissioner's cross-motion for summary judgment. For the reasons stated below, the Court reverses the Commissioner's final decision and remands for rehearing.

**I.    BACKGROUND**

Cruz was born in Mexico in 1957. Administrative Record ("AR") at 1. Cruz attended school only through the third grade, and she began working at the age of eight. AR at 505. Cruz came to the United Sates in 1977. AR at 478. While in the United States, she took some English classes, AR at 93, and worked several jobs, including being a cook at a Chinese restaurant, an aide in a convalescence home, and a sandwich maker and cashier at a high school in Mountain View, California. AR at 500-01. Cruz testified that some of her co-workers at the high school were bilingual and the students spoke Spanish. AR at 79, 112. She worked there until in 2008, when she was injured. AR at 66.

In December 2010, Cruz applied for Disability Insurance Benefits under Title II of the

1   Social Security Act, 42 U.S.C. Sections 416(i), 423(d), stating that she had been disabled since
2   February 6, 2008.  AR at 181.  The Social Security Administration denied her application both
3   initially and on reconsideration.  AR at 129, 136.  Cruz then requested a de novo hearing before an
4   administrative law judge (ALJ).  AR at 142.  In June 2012, Cruz appeared with counsel and
5   testified, with the assistance of a Spanish-language interpreter, at an administrative hearing before
6   ALJ Phillip C. Lyman.  AR at 37-39.  Judith Najarian testified as a vocational expert ("VE").  Id.

7   Under the authority of the Social Security Act and pursuant to 20 C.F.R. Section
8   404.1520(a), the ALJ applied "the established [] five-step sequential evaluation process for
9   determining" if Cruz is disabled.  AR at 25.  The ALJ rendered a partially favorable decision for
10  Cruz, holding that she was disabled beginning March 5, 2012, but not disabled from February 6,
11  2008 through March 4, 2012 ("the disputed period").  AR at 32.

12  In finding that Cruz was not disabled during the disputed period, the ALJ first determined
13  that Cruz met the first four steps of the five-step evaluation:  (1) Cruz "has not engaged in
14  substantial gainful activity" as defined in 20 C.F.R. Section 404.1571; (2) Cruz "has had [a] severe
15  impairment" according to 20 C.F.R. Section 404.1520(c); (3) Cruz's impairment does not "meet[]
16  or medically equal[] the severity of one of the listed impairments in 20 C.F.R. Section 404,
17  Subpart P, Appendix 1"; and (4) "prior to March 5, 2012, [Cruz] had the residual functional
18  capacity to perform light work as defined in 20 C.F.R. 404.1567(b) . . . ."  AR at 26-27.

19  At Step Five, the ALJ found that Cruz was "closely approaching advanced age" as defined
20  in 20 C.F.R. Section 404.1563; "has a marginal education and is able to communicate in English"
21  according to 20 C.F.R. Section 404.1564; and "has no past relevant work experience" under 20
22  C.F.R. Section 404.1565 and thus according to 20 C.F.R. Section 404.1568, "[t]ransferability of
23  job skills is not an issue . . . ."  AR at 30-31.  The ALJ concluded that, during the disputed period,
24  "a finding of 'not disabled' would be directed by Medical Vocational Rule 202.10."  AR at 31.

25  Nonetheless, the ALJ noted that Cruz's "ability to perform all or substantially all of the
26  requirements of this level of work was impeded by additional limitations," requiring consultation
27  with the VE to determine "the extent to which these limitations eroded the unskilled light
28  occupational base."  Id.  The ALJ concluded that based on Cruz's other physical and mental

1   limitations, see AR at 27, and the vocational expert's testimony, "there were jobs that existed in

2   significant numbers in the national economy that [Cruz] could have performed . . . ." AR at 31.

3   Thus, the ALJ held, "a finding of 'not disabled' is [] appropriate under the framework of [Medical-

4   Vocational Rule 202.10]" for the period prior to March 5, 2012. AR at 32.

   Cruz requested the Appeals Council to review the decision, but the council denied the
request, rendering the ALJ's decision final. AR at 4.

   Cruz filed this suit on February 3, 2015, challenging the ALJ's conclusion that she was not disabled during the disputed period. ECF No. 12 at 1. Cruz and the Commissioner agree that the ALJ correctly applied the first four steps of the five-step evaluation. See id. at 6; ECF No. 13 at 2. The Court therefore must decide only if the ALJ correctly applied the fifth step.

## II.   JURISDICTION AND STANDARD OF REVIEW

District courts have jurisdiction to review final decisions of the Commissioner of Social Security under 42 U.S.C. § 405(g). The Court may set aside a denial of benefits only if it is "not supported by substantial evidence in the record or if it is based on legal error." Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1084-85 (9th Cir. 2000). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Id. at 1085. It is "more than a scintilla but less than a preponderance." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The Court "review[s] the administrative record in its entirety to decide whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports and evidence that detracts from the ALJ's determination." Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." Id. at 1258. However, courts "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).

## III.   ANALYSIS

Federal regulations provide a five-step sequential evaluation for determining whether a claimant is disabled within the meaning of the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The five steps are:

3

|   |   |
|---|---|
| (1) | Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two. |
| (2) | Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three. |
| (3) | Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. |
| (4) | Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five. |
| (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The claimant has the burden of proving steps one through four. Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001). At step five, the Commissioner has the burden to show that the claimant can perform "other work" that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. See Gaona v. Colvin, 2014 WL 1614846, at *5 (N.D. Cal. 2014) (citing Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999)); 20 C.F.R § 404.1560(b)(3); 20 C.F.R § 404.1520(a)(v). If the Commissioner carries her burden, the claimant is not disabled and not entitled to benefits. See 20 C.F.R. §§ 404.1520(f), 404.1562. But if the ALJ fails to do so, the claimant is disabled and entitled to benefits. See id.; Tackett, 180 F.3d at 1099.

There are two ways for the Commissioner to meet this burden: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Tackett, 180 F.3d at 1101; accord Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010). "The Guidelines present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as 'the grids.'" Tackett, 180 F.3d at 1101. "The Grids are consulted first to

determine if a claimant is 'disabled.'" Broadway v. Colvin, 2014 WL 4249153, at *16 (E.D. Cal. 2014) (citing Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006)). "[W]here application of the Grids directs a finding of disability, that finding must be accepted by the Secretary." Cooper v. Sullivan, 880 F.2d 1152, 1157 (9th Cir. 1989).

Two Grid Rules are relevant here, Rule 202.09 and Rule 202.10. See AR at 30-31. Both Rules apply to claimants who (1) are limited to light work as a result of severe medically determinable impairment, (2) closely approach advanced age (age 50-54), and (3) are unskilled or have no previous work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rules 202.09, 202.10. The difference between the Grids is that under Rule 202.09, the claimant is disabled if she is illiterate or unable to communicate in English, while under Rule 202.10, the claimant is not disabled if she has limited or less education and is at least literate and able to communicate in English. Id.

Cruz asserts that, in consulting the Grid, the ALJ should have applied Rule 202.09 – which would have mandated a finding of disability – rather than Rule 202.10. Because the issue of Cruz's literacy was determinative of which Rule applied, Cruz argues that the ALJ erred by failing to make any finding as to whether Cruz was literate. ECF No. 12 at 9. Cruz also argues that the ALJ erred in expressly finding that Cruz was able to communicate in English, as this conclusion was not supported by substantial evidence. Id. at 13. Finally, Cruz contends the ALJ "did not comply with" the requirements of Social Security Ruling 00-4p when questioning the VE. Id. at 15.

### A.     The ALJ failed to make a literacy finding

The Commissioner has the burden to establish the claimant's education level. See Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000). This includes determining the claimant's "English language literacy, which refers to the ability to read and write in English." Gaona, 2014 WL 1614846, at *5 (citing 20 C.F.R. § 404.1564(b)). The Commissioner considers a claimant "illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §§ 404.1564(b)(1); see Garcia v. Astrue, 2013 WL 394517, at

5

*5 (E.D. Cal. 2013). A claimant's ability to communicate verbally in English "does not mean that the claimant is literate." Rodriguez v. Astrue, 2013 WL 458176, at *1 (C.D. Cal. 2013) (citing Silveira at 1261 n.13).

In order to reach the conclusion that, during the disputed period, Rule 202.10 applied to Cruz, see AR at 31, the ALJ had to first conclude that Cruz was literate, but did not do so. The ALJ found that Cruz (1) "had the residual functional capacity to perform light work"; (2) was "closely approaching advanced age"; (3) "has no past relevant work experience"; and (4) "has marginal education and is able to communicate in English." AR at 30-31. Based on these findings, Cruz could fall under either Medical Vocational Rule 202.09 or Rule 202.10. If the ALJ had concluded that Cruz was illiterate, then Rule 202.09 would have dictated a finding that she was disabled; if the ALJ had determined that Cruz was literate, then Rule 202.10 would be the controlling framework, in which case the vocational expert would then testify regarding the claimant's additional limitations that were not captured by the Grid. See Franco v. Astrue, 2012 WL 3638609, at *13 (C.D. Cal. 2012) (explaining a similar situation). But the ALJ made no conclusion as to Cruz's literacy – as to English language abilities, the ALJ only found that Cruz had "some ability to *speak* in English." AR at 31 (emphasis added).

In its brief, the Commissioner argues that the "focus here is not on whether [] evidence was sufficient to establish that [Cruz] is illiterate, but whether the ALJ's finding that [Cruz] was able to communicate in English is supported by substantial evidence." ECF No. 13 at 2. But in order to apply Rule 202.10, the ALJ did not have to prove *either* that Cruz was literate *or* able to communicate in English; the ALJ had to prove *both*. See Silveira, 204 F.3d at 1261 n.13 ("The 'or' in 'illiterate or unable to communicate in English' [is] 'conjunctive,' [meaning] claimants meet that criterion if they are illiterate or unable to communicate in English or both."); Garcia, 2013 WL 394517, at *7 (Where Rule 202.09 may apply, "ALJ's failure to make a finding as to literacy and to provide reasons for the finding made as to English communication abilities warrant remand for determination of these issues."). The ALJ erred in failing to make *any* finding as to Cruz's English literacy.

Cruz requests that the Court hold that Cruz was clearly disabled at Step Five and remand

6

for a finding of disability during the disputed period. Although the Court agrees that a remand is appropriate, the record is ambiguous on the issue of literacy, as the ALJ failed to make any finding before concluding that Rule 202.10 applied. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (holding that the ALJ must resolve all ambiguities). The ALJ "has an independent 'duty to fully and fairly develop the record . . . .'" Palos v. Colvin, 2013 WL 5217536, at *7 (C.D. Cal. 2013) (quoting Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)). This is especially true if "there is ambiguous evidence or [] the record is inadequate to allow for proper evaluation of the evidence." Palos, 2013 WL 5217536, at *7 (quoting Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)). "Ascertaining reading ability may simply involve asking Plaintiff to read aloud a short news article, or asking him to write a note." Wilkey v. Colvin, 2014 WL 6685078, at *7 (E.D. Cal. 2014) (internal quotations and citations omitted). Therefore, the Court will remand for further development of the record on the issue of Cruz's literacy.

### B. Substantial evidence did not support the ALJ's finding that Cruz was able to communicate in English

To establish a claimant's educational background, the ALJ also must prove "how well [a claimant is] able to communicate in English . . . ." Gaona, 2014 WL 1614846, at *5; 20 C.F.R. § 404.1564(b). The ALJ must show if the claimant is able to "speak, read and understand English." Id. Cruz argues that the ALJ erred by concluding that she had "some ability to speak in English," AR at 31, as this finding was not supported by substantial evidence. ECF No. 12 at 13. Cruz argues that this error also affected the application of the Grid, as a finding that Cruz could not communicate in English would have dictated the application of Rule 202.09, which would have resulted in a finding of disability during the disputed period. Id.

The ALJ "must make fairly detailed findings . . . to permit courts to review her decisions intelligently." Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984); E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist., 2008 WL 4615436, at *2 (N.D. Cal. 2008). Although the ALJ does not have to "discuss all evidence presented to her[,] she must explain why significant probative evidence has been rejected." Vincent, 739 F.2d at 1395. The ALJ must also determine the claimant's credibility, resolve conflicts in medical testimony, and resolve all other

ambiguities. <u>Magallanes</u>, 881 F.2d at 750. If "an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>see also</u> <u>Dubois v. Colvin</u>, 2014 WL 1431948, at *8 (E.D. Cal. 2014) (requiring an ALJ to support an explicit credibility finding with "a specific, cogent reason for the disbelief") (citing <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990)).

The Court concludes that ALJ's finding that Cruz could speak English was not supported by substantial evidence, as the ALJ failed to explain why he rejected significant probative evidence and to make specific findings establishing that Cruz was not credible. The ALJ concluded that Cruz was able to communicate in English because (1) Cruz "has been living and working in the United States for over 30 years"; (2) Cruz had spent "10 [] years as a cashier at an affluent private high school," and (3) "Dr. Acenas noted that [Cruz] had adequate English-speaking abilities" and that Cruz "did not require an interpreter during her exam" with Dr. Acenas. AR at 30-31. The ALJ also found not credible Cruz's statement that she had a "complete inability" to communicate in English. AR at 30.

In support of finding that Cruz's claim that she was unable to communicate in English was not credible, the ALJ first noted that "Cruz has been living and working in the United States for over 30 years." AR at 30. The ALJ did not explain why Cruz's residency within the United States provided a specific, cogent reason for disbelief of Cruz's testimony. This was error, because someone who lives in the United States for a long period of time does not necessarily develop the ability to communicate in English.

In concluding that Cruz's work as a cashier at private high school suggested Cruz had the ability to communicate in English, the ALJ did not discuss Cruz's testimony that the students at the high-school spoke Spanish, AR at 79, that Cruz did not have to communicate in English to make a sale, AR at 80, and that many of her co-workers were bilingual. AR at 112. There was no testimony that Cruz spoke English on the job. <u>See</u> AR at 103; <u>cf.</u> <u>Flores v. Colvin</u>, 546 F. App'x 638, 640 (9th Cir. 2013) (concluding that ALJ "offered clear and convincing reasons for his adverse credibility finding that [claimant] could understand basic verbal English" where claimant

took courses in English at a community college and "was required to converse, at least to some degree, in English with his supervisors, co-workers, and customers" during twelve years of employment at a grocery store). If the ALJ found Cruz's testimony that during her time as a cashier she did not speak English not to be credible, he was required to explain his reasons for disbelieving her testimony. See Rashad, 903 F.2d at 1231. The ALJ erred in failing to explain his adverse credibility determination.

The ALJ also erred by relying on Dr. Acenas' report in support of the finding that Cruz could communicate in English, but failing to address "significant probative evidence" to the contrary. See Vincent 739 F.2d at 1395. The ALJ did not discuss all relevant facts in Dr. Acenas' report. The ALJ characterized the report as follows: "Dr. Acenas noted that [Cruz] had adequate English-speaking abilities during her consultative examination. She did not require an interpreter during her exam." AR 30-31. But Dr. Acenas did not in fact write that Cruz "has adequate English-speaking abilities," AR at 30; he wrote that Cruz "has some English proficiency"– a fundamentally different assessment connoting a substantially lower level of language abilities. AR at 625. Moreover, Dr. Acenas' report indicates that Cruz brought a friend to the examination, which potentially explains the lack of need for an interpreter. See id.

Furthermore, while the ALJ gave heavy weight to Dr. Acenas' report, he did not discuss numerous doctors' reports indicating that Cruz lacked the ability to communicate in English. Dr. Shieu was Cruz's treating physician, and thus, her reports should be considered at least as persuasive as Dr. Acenas' report. See Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) ("[M]ore weight is given to a treating physician's opinion than to the opinion of a nontreating physician because a treating physician 'is employed to cure and *has a greater opportunity to know and observe* the patient as an individual.'") (emphasis added) (quoting Magallanes, 881 F.2d at 751). Dr. Shieu noted on five occasions that she was not able to communicate effectively with Cruz, requesting an interpreter after each meeting.[1] AR at 330, 336, 346, 371, 397. She also described Cruz as a "Spanish speaker." AR at 344. The ALJ also did not discuss the other doctors

---

[1] An interpreter accompanied Cruz to other appointments with Dr. Shieu. See e.g., AR at 344, 396.

9

who used interpreters when meeting with Cruz. See e.g., AR at 408 (Dr. Massey), 429 (Dr. Lin), 462 (Dr. Noriega), 526 (Dr. Landeza). The ALJ should have discussed this significant probative evidence suggesting Cruz could not communicate in English, rather than handpicking the single doctor's report that suggested Cruz had "some English proficiency." See Garcia, 2013 WL 394517 at *8 (remanding for failure to discuss the conflicting evidence regarding Plaintiff's ability to communicate in English).

Finally, the ALJ's findings that Cruz's testimony about her language abilities was not credible and that Cruz had "some ability to speak in English," AR 30-31, are further belied by the ALJ's own decision to ask the VE only hypotheticals that posited the claimant was "monolingual Spanish." See AR at 92-93, 118. The order states that the ALJ "finds that the claimant has some ability to speak in English but has asked the VE to identify jobs where Spanish can predominantly be spoken." Id. at 31. The ALJ refused to apply Rule 202.09 to find Cruz disabled under the Grid, but then exclusively posed hypotheticals to the VE that would have mandated a finding of disability under Rule 202.09. Thus, in addition to failing to discuss the substantial probative record evidence indicating Cruz lacked the ability to communicate in English, the ALJ never explained the internal inconsistency of his own order on the issue of Cruz's English communication abilities.

In sum, the ALJ's decision that Cruz is not able to communicate in English was not supported by substantial evidence because the ALJ did not explain why he rejected significant probative evidence and why he found Cruz's testimony to be not credible. The Court will remand for further development of the factual record on this ground.

### C. Substantial evidence does not support the ALJ's decision, because the ALJ violated SSR 00-4p by relying on vocational expert's testimony

Although Cruz contends that the ALJ erred in not finding her to be disabled under Rule 202.09, she also contends that the ALJ erred in questioning the VE regarding her additional limitations that were not captured by Rule 202.10. ECF No. 12 at 15-18. For disability determinations, the ALJ relies on the DOT for information concerning the requirements of work in the national economy but may also rely on the testimony of a VE. See SSR 00-4p, available at

2000 WL 1898704, at *2, 4; Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). If the VE testifies, the "ALJ must ask the vocational expert if her testimony conflicts with information provided in the DOT, and if so, the ALJ must obtain a reasonable explanation for the conflict." Wells v. Colvin, 2013 WL 6225180, at *3 (N.D. Cal. 2013) (citing SSR 00-4p, 2000 WL 1898704, at *4). "When vocational evidence . . . is not consistent with information in the DOT[,] the adjudicator must explain in the determination or decision how he or she resolved the conflict." SSR 00-4p, 2000 WL 1898704, at *4. However, "an ALJ's failure to make this inquiry is harmless when there is no conflict between the vocational expert's testimony and the DOT, or if the vocational expert provides 'sufficient support for her conclusion so as to justify any potential conflicts.'" Wells, 2013 WL 6225180, at *3 (quoting Massachi, 486 F.3d at 1154 n.19). The purpose of SSR 00-4p is to "ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony. . . ." Massachi, 486 F.3d at 1153.

Cruz first argues that the ALJ violated the Social Security Ruling 00-4p by failing to ask the VE whether her testimony conflicted with the DOT. See ECF No. 12 at 16. The ALJ asked the VE to explain where her opinion departed from "terms and provisions of authoritative sources binding" on the ALJ. AR at 92. Cruz contends that because the ALJ can depart from the DOT so long as he provides a reasonable explanation for the conflict, the DOT is not binding on the ALJ, and the ALJ thus failed to ask the VE whether her testimony conflicted with the DOT. Cruz's argument on this point is self-defeating. Even if the DOT is not technically binding on the ALJ, the ALJ is bound to explain conflicts between the VE testimony and the DOT, as Cruz argues elsewhere in her motion. See id. at 17-18. Therefore, while it may be better practice for the ALJ to name the DOT expressly in requesting that the VE explain conflicts, the ALJ's imprecise phrasing of the request in this instance is not itself error.

Cruz's other arguments regarding the ALJ's examination of the VE are well-taken, however. The ALJ erred by failing to obtain testimony providing a reasonable explanation for conflicts between the VE's testimony and the DOT. ECF No. 12 at 16. Despite finding that Cruz could communicate in English, the ALJ asked the VE to identify jobs that could be performed by someone who was "monolingual Spanish." AR at 94. The VE testified in response to one of the

11

ALJ's hypotheticals that, under the DOT, Cruz could work as both a stock checker apparel and cafeteria attendant. AR at 119-20. These jobs both have a Language Level of 1, requiring some ability to communicate, read, and write in English. DOT, Nos. 299.667-0145 (stock checker apparel), 311.677-0106 (cafeteria attendant).[2] The ALJ never obtained—nor did the VE offer—an explanation for why a monolingual Spanish person could work these jobs.[3] See Wells, 2013 WL 6225180, at *4 (where the "DOT is plainly at variance with the vocational expert's testimony[,] the vocational expert could not evaluate whether and to what extent the availability of such jobs would be affected if the individual performing the job was precluded from reading or writing"); Barrera v. Astrue, 2012 WL 4361416, at *10 (D. Ariz. 2012) (where vocational expert identified jobs requiring DOT Language Level 1, but RFC provided claimant "is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English," the ALJ's failure to reconcile conflict required remand); Oeur v. Astrue, 2012 WL 234642, at *5-6 (C.D. Cal. 2012) (same, where vocational expert identified jobs requiring Language Levels 1 and 2, but RFC stated claimant "cannot read or write in [the] English language").

The Commissioner argues that the VE's testimony does not conflict with the DOT, as language level "is not a requirement for a particular job, or reflective of the individual's RFC[,] because the GED levels merely reflect a certain expected aptitude or competency . . . ." ECF No. 13 at 8. The Commissioner does not cite to any authority in support of its position, id.; the Court does not see a meaningful difference between the terms *expected competency* and *requirement*; and the first line of DOT Appendix C Section III holds that "General Educational Development embraces those aspects of education (formal and informal) which are *required* of the worker for satisfactory job performance." (emphasis added).[4]

---

[2] United States Department of Labor Office of Administrative Law Judges Law Library, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02D.HTM (stock checker apparel); http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03A.HTM (cafeteria attendant).
[3] Commissioner argues that the "VE indicated that such jobs do not require speaking." ECF No. 13 at 8. This testimony, however, was related to different jobs based on a different hypothetical. AR at 102 (discussing that speaking may not be required as an ampoule sealer or atomiber assembler, not cafeteria attendant and stock checker apparel).
[4] United States Department of Labor Office of Administrative Law Judges Law Library, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

Because the VE did not acknowledge the conflict, the ALJ also violated SSR 00-4p by failing to explain in the decision how he resolved the conflict. The ALJ had a duty to explain how a monolingual Spanish person could work jobs that require some reading, writing, and speaking in English. Nevertheless, the ALJ wrote that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the [DOT]." AR at 31. Because neither the ALJ nor the vocational expert addressed the impact of Plaintiff's limitations concerning reading and writing on his ability and the availability of stock checker apparel and cafeteria attendant jobs in the national economy, there was no reasonable basis for deviating from the DOT. Accordingly, the vocational expert's testimony cannot serve as substantial evidence in supporting the ALJ's determination at step five that Plaintiff is not disabled. Because the error was not harmless, the Court must remand for rehearing.

## CONCLUSION

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Wells, 2013 WL 6225180, at *5 (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)); see Massachi, 486 F.3d at 1154 (remanding for failure to consider conflict between vocational expert's testimony and the DOT). A remand for award of benefits is not appropriate here because there are outstanding issues that need to be resolved. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996) ("[W]e have credited evidence and remanded for an award of benefits where . . . there are no outstanding issues that must be resolved before a determination of disability can be made.")

The Court remands this case for a rehearing consistent with this decision. On remand, the ALJ must determine whether from February 6, 2008 through March 4, 2012 Cruz was (1) literate, meaning she was able to read and write in English; and (2) able to communicate in English. If the answer to either question is no, then the ALJ must determine that Cruz was disabled during the disputed period under Rule 202.09. If the ALJ finds the answer to both questions is yes, then the ALJ must obtain vocational expert's testimony in accordance with the requirements of SSR 00-4p

/ / /

/ / /

13

to determine if other jobs existed in significant number in the national economy that Cruz could have performed.

IT IS SO ORDERED.

Dated: May 27, 2015

_____
JON S. TIGAR
United States District Judge